

300 Cadman Plaza West, 12th Floor
Brooklyn, NY 11201
P: (718) 852-3710
F: (718) 852-3586
www.stollglickman.com

Hon. Eric Komitee                                                                                         July 1, 2022
United States District Court, EDNY
225 Cadman Plaza East
Brooklyn, NY  11201
By ECF

Re:   Kalief Williams v. The Russo's Payroll Group, et al.
      21-CV-2922 (EK)(CLP)

Your Honor-

Introduction

I am Plaintiff's counsel in the above captioned matter.  I understood the Court to grant us leave to supplement the briefings in response to the Court's inquiry concerning Title VII constructive termination cases based at least in part on workplace violence.  Specifically, aside from our Hostile Work Environment claim under Title VII, the question was whether we sufficiently pled a Constructive Discharge claim, arising from the allegations of workplace violence.

As a threshold matter, the Complaint's First Cause of Action identifies "Race Discrimination in Violation of Title VII."  In support of that, ¶ 61 identifies that he was "subjected to a hostile work environment *and* discriminated against in the terms and conditions of his employment, including by constructive discharge" (emphasis added).  Whether viewed as a freestanding claim under Title VII (*see Green v. Brennan*, 578 U.S. 547, 559 (2016) ("a claim for constructive discharge lies under Title VII") or as an "aggravated case of… harassment or hostile work environment", "a 'worse case' harassment scenario, harassment ratcheted up to the breaking point," *Pa. State Police v. Suders*, 542 U.S. 129, 131-132 (2004), either way, the constructive discharge "is functionally the same as an actual termination in damages-enhancing respects". *Id*. at 148.  It is perhaps for this reason that defendants, though they stand little chance of prevailing on a bid to dismiss a simpler hostile work environment claim under Title VII, nevertheless seek to cut off a claim for constructive discharge.

However a constructive discharge is framed, its elements are clear: "a plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign and (ii) a plaintiff must also show that he actually resigned." *Maron v. The Legal Aid Soc'y*, 21-CV5960 (KPF), at *38 (S.D.N.Y. June, 2022) (*cleaned up*) (*citing Green v. Brennan*, 578 U.S. 547, 559-60 (2016). *See also Bansal v. City of New York*, 18-CV-878 (ENV)(LB), at *31 (E.D.N.Y. 2020) (*also citing Green*). Ultimately, it appeared to me the Court was interested in whether there are cases supporting the proposition that physical violence supports the first element.

Facts

Robbie Russo is the son of the owner at Russo's on the Bay, and supervised Mr. Williams. ¶¶ 4-5.[1] In addition to more general allegations of racial preference given to lighter skinned personnel, Mr. Williams alleged specifically that employees, especially managers, used the N word "constantly", including when they addressed or described Mr. Williams, and in front of other staff and sometimes guests. ¶ 20. Despite protests, his supervisor "still wouldn't stop". ¶ 22. One of Mr. Williams' managers said "I don't like that f'ing N", referring to Mr. Williams, and Mr. Williams did not get his full share of tips that day. ¶ 23. Mr. Williams complained to the owner but "nothing changed". ¶ 26. On Sept 4, 2016, Robbie Russo unleashed a profane racial tirade against Mr. Williams. ¶¶ 32-34. Soon after that, Robbie's father, the owner, left, without taking protective action. ¶ 35. Robbie Russo then physically menaced and harassed Mr. Williams, threatening further physical harm. ¶¶ 36-38. When Mr. Williams was given physical sanctuary in the manager's office, Robbie Russo was banging on the closed door of the office. ¶ 40. Mr. Williams was aware of rumors that Russo's is connected to organized crime. ¶ 44. Two days after the incident, personnel at Russo's Human Resources Department were unaware of any incident with Robbie Russo, even though it had been witnessed by many employees. ¶ 47. After he reported the incident, Mr. Williams was allowed to meet with the General Manager, who kept Mr. Williams waiting for over an hour while he spoke with Robbie Russo, then told Mr. Williams "kids make mistakes and kids are gonna be kids", was evasive about whether Mr. Williams would have to work again with Robbie Russo, and said Robbie would return after a brief suspension. ¶¶ 49-51. Mr. Williams reached out to Frank Russo, Jr. for assurances of safety and protection, but he received no response. ¶¶ 52-53. Instead, he was just placed on the work schedule. ¶ 53. There was no follow up investigation, and no measures instituted to address and correct racism in the workplace. ¶ 54. After the assault, Robbie Russo travelled in Europe, then returned to Russo's. ¶ 57. After the incident with Robbie Russo, Mr. Williams never went back to work at Russo's. *Declaration of Emanuel Kataev,, Esq. in Support of Defendants' Motion to Dismiss and Strike Allegations from the Complaint, Exhibit A*, ¶ 29.

The Law

A constructive discharge occurs when working conditions are "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Chertkova v. Connecticut General Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996). Certain actions can "ratchet up"

---

[1] Paragraph numbers refer to the Complaint filed in this action, except where otherwise noted.

harassment "to the breaking point" for a reasonable employee. *Petrosino v. Bell Atl.*, 385 F.3d 210, 230 (2d Cir. 2004) (*citing Pennsylvania State Police v. Suders*, 542 US 129, 131 (2004). Thus, courts consider employees' complaints in the aggregate, even if no single instance suffices to support a constructive termination claim. *See Champagne v. Columbia Dental, P.C.*, 18-CV-1390 (VLB) at *1 (D. Conn. Jan. 19, 2022). Courts within this Circuit have found physical assaults sufficient to support constructive discharge claims. *See Miller v. Ethan Allen Global, Inc.*, 10-CV-1701 (JCH), at *7-9 (D. Conn. Aug. 22, 2011) (two physical assaults unaddressed by supervisor suffice to establish a reasonable person would have felt compelled to resign).

Courts have found even relatively minor physical assaults to suffice in constructive discharge claims, where they were part of an ongoing pattern of unremedied harassment. *See Pignone v. United Parcel Serv.*, 20-CV-5, at *15 (N.D.N.Y. Mar. 2020) (slapping of backside and putting arms around plaintiff part of repeated sexual harassment); *Ibrahim v. Fid. Brokerage Servs. LLC*, 19-CV-3821 (VEC), at *14-17 (S.D.N.Y. Jan. 9, 2020) ("constant unwanted advances", touching of plaintiff's genitals without consent, suggestion pregnancy may lead to termination, reduced work responsibilities and negative performance evaluations, with no HR support, support claim); *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 262 (S.D.N.Y. 2014) (sexual advances and several forcible attempts to kiss support constructive discharge claim).

Even discrimination caused directly by a customer, and not a fellow employee or supervisor, can set in motion a constructive termination. *See Creacy v. BCBG Max Azria Grp., LLC*, 14-CV-10008 (ER), at *17 (S.D.N.Y. Mar. 2017) (customer twice verbally assaulted and once physically assaulted plaintiff). As here, *Creacy* involves a single physical assault, multiple instances of verbal harassment, and disputed issues about half-hearted remedial measures.

In *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1050-51 (7th Cir. 2000), the Seventh Circuit summed up with what should be uncontroversial: "[w]hen it becomes reasonable to fear serious physical harm, it becomes reasonable to quit immediately rather than seek redress while on the job." One district court in the Seventh Circuit recently quoted that language writing that "[t]he prototypical case of a constructive discharge involves "a threat to a plaintiff's personal safety" *Outley v. The City of Chicago*, 17-CV-8633, at *29 (N.D. Ill. Oct. 2021).

Finally, defendants point to a brief suspension of Robbie Russo, but it is unclear what import they claim that has. Certainly, not every half-hearted remedial action can head off a constructive discharge claim. *See Guthrie v. Baker*, 07-CV-821, at *30-31 (W.D. Pa. Aug. 2008) (constructive discharge survives where defendants offered, but never followed up on plaintiff's call accepting, an offer to work shifts away from her harasser); *Pignone v. United Parcel Serv.,* 20-CV-5 at 15 (NDNY Mar. 2020) (constructive discharge survives where transfer offered to employee but was rejected for several articulable reasons). The Second Circuit has allowed a Hostile Work Environment claim to proceed notwithstanding a two-day suspension of the plaintiff's harasser. *Howley v. Town of Stratford*, 217 F.3d 141, 156 (2d Cir. 2000)

Notwithstanding the "suspension" of Kalief Williams' tormentor in this case, the question remains whether it is plausible that a reasonable person in Mr. Williams' shoes would have felt he had no choice but to quit, without an assurance, which he explicitly requested, that he would not have to continue working alongside Robbie Russo. In this "prototypical case" involving explicit threats

on the Plaintiff's safety from the owner's son, the Complaint's allegations, excerpted above, readily support an affirmative answer.

The standard under the New York City Human Rights Law for constructive discharge is lower than its federal counterparts. A Plaintiff need only show that he "was subjected to an environment hostile enough to force him to quit because of some factor prohibited by the statute." *In the Matter of Commission on Human Rights ex rel. Monica Cardenas, Petitioner v.. Automatic Meter Reading Corp. and Jerry Fund, Respondents MONICA CARDENAS, Complainant-Intervenor*, 2015 WL 7260567, citing *Zick v. Waterfront Comm'n of N. Y. Harbor*, 11-CV5093, 2012 WL 4785703, at *8 (S.D.N.Y. Oct. 2012).

In sum, Plaintiff has amply pled a hostile work environment claim. Additionally, his constructive discharge, whether considered as a free-standing claim under his Title VII cause of action, or as an avenue to increased damages under his hostile work environment claim, is also readily supported by the pleadings. Finally, the law under the New York City Human Rights Law has a lower burden, which is also readily supported.


Sincerely Yours,

Andrew B. Stoll