UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KALIEF WILLIAMS,

                    Plaintiff,

        -against-                               **REPORT AND**
                                                          **RECOMMENDATION**
THE RUSSO'S PAYROLL GROUP, INC.,              21 CV 2922 (EK) (CLP)
D/B/A RUSSO'S ON THE BAY, FRANK
RUSSO, JR., ROBERT "ROBBIE" RUSSO,
and GIUSEPPE "JOE" VACCA,

                    Defendants.
------------------------------------------------------------X
**POLLAK**, Chief United States Magistrate Judge:

        On May 24, 2021, plaintiff Kalief Williams commenced this action against defendants The Russo Payroll Group, Inc., d/b/a Russo's on the Bay, Frank Russo, Jr., Robert "Robbie" Russo, and Giuseppe "Joe" Vacca ("defendants"), alleging that the defendants subjected him to race discrimination and a hostile work environment and constructively terminated him from his employment with defendants' restaurant, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the New York City Human Rights Law, Chap. I, Title 8 Admin. Code of N.Y. § 8-107(1)(a). Currently pending before this Court on referral from the Honorable Eric Komitee, United States District Judge, is plaintiff's motion for a default judgment against defendant Robert "Robbie" Russo and defendant Robert Russo's motions to vacate the entry of default and strike plaintiff's motion for default judgment.

FACTUAL BACKGROUND

        Plaintiff Kalief Williams alleges that Russo's On the Bay ("Russo's") is a catering hall

1

that opened in Howard Beach, Queens in 1987.  (Compl.[1] ¶¶ 2, 11).  Russo's "hosts lavish events," such as weddings, political fundraisers, and cultural events, and features Italian cuisine.  (Id. ¶ 11).  According to the Complaint, Russo's, and its sister business, Vetro Restaurant and Wine Bar ("Vetro"), are operated by the Russo's Payroll Group, Inc., a New York domestic corporation that is located in Howard Beach, N.Y.  (Id. ¶ 2).  Defendant Frank Russo, Jr. is alleged to be the owner of Russo's; defendant Robert Russo is Frank Russo's son and was a manager of Russo's; and Giuseppe Vacca was allegedly a maître d' at Russo's.  (Id. ¶¶ 4-6).

Plaintiff, a Black man, was hired in May 2015 to work as a server at Russo's and at Vetro.  (Id. ¶ 12).  Plaintiff alleges that "[f]rom the very first day of work," he observed that Black people were employed at Russo's in entry level positions and relegated to working in "lower-visibility[,]" "back of the house" positions as valets, servers, runners, and kitchen workers, while the management roles and higher paying positions were held by whites and light-skinned Latinos.  (Id. ¶¶ 13-14).  Not only did the managers allegedly earn a higher hourly rate, but they also received a greater percentage of the tip pool.  (Id. ¶ 16).  Plaintiff alleges that, during his tenure, there were no obvious pathways for promotion at Russo's and he observed "many qualified Black people" passed over for promotion, with positions being given to less qualified applicants who were not Black and "often newcomers" to Russo's.  (Id. ¶¶ 15, 17).  Plaintiff also alleges that white employees received preferential assignments to lucrative events and that he was often the first to be sent home if there were too many employees booked for an event.  (Id. ¶ 19).

In addition to being treated differently from white employees because of his race, plaintiff alleges that, when addressing plaintiff and his brother, Kajeen Lucas, who worked at

---

[1] Citations to "Compl." refer to plaintiff's Complaint, filed May 24, 2021, ECF No. 1.

2

Russo's at approximately the same time, "employees, especially managers," "constantly" and publicly used racial slurs. (Id. ¶¶ 12, 20). The Complaint alleges a variety of comments and incidents in which defendant Vacca and other members of the restaurants' managerial staff would refer to plaintiff and his brother in racially derogatory terms or make inappropriate and racially oriented comments about Black women and other non-white ethnic groups. (Id. ¶¶ 21-31).

According to the Complaint, on September 4, 2016, plaintiff was working at a party being managed by defendant Robert Russo ("Robert"). (Id. ¶ 32). At some time after 1:30 a.m., it is alleged that Robert came out into the ballroom and started yelling at the crew staff, which included "at least five Black people[,]" about finishing up. (Id.) Using profanity, Robert called Williams a "lazy f___" and a "stupid f__ing n____[,]" and used the word "n____" multiple times. (Id. ¶¶ 32-34).

Frank Russo, Jr., who was present, asked Robert to leave the room, at which time, Robert threw down his walkie-talkie, shattering it. (Id. ¶ 34). Plaintiff alleges that despite Robert's "violent tirade," Frank Russo left the premises "knowingly abandoning Williams and the remaining Black workers at the mercy of a raging manager." (Id. ¶ 35). After Frank Russo left, plaintiff also tried to leave, but was cornered by Robert in an office in the establishment's basement. (Id. ¶¶ 36-37). According to plaintiff, Robert tried to provoke a physical reaction from him, but plaintiff knew that if he tried to defend himself he would lose his job, so he told Robert that he just wanted to go home. (Id. ¶¶ 37-38). When plaintiff finally got out of the office, Robert followed behind him and pushed and threatened him, shouting things, including a threat to "break" plaintiff's "jaw." (Id. ¶¶ 38-40).

Plaintiff alleges that no one at Russo's did anything to follow up to see if Williams

3

needed care or to let him know how the assault would be handled. (Id. ¶ 46). Plaintiff claims that on September 6, 2016, he contacted Jaclyn Ceparano, a Human Resources officer at Russo's, but no one had reported the incident and she was unaware that it had occurred. (Id. ¶ 47). Ceparano told plaintiff that she would speak to Philip Montante, the General Manager of Russo's, and that plaintiff should not file a police[2] report or it "would be 'out of their hands.'" (Id. ¶ 48).

According to plaintiff, he met with Montante, who told him that "[k]ids make mistakes and kids are gonna be kids[,]" and that Robert would return to work "after a brief suspension." (Id. ¶¶ 50-51). Plaintiff was not satisfied with this solution and sought out Frank Russo, Jr. to secure plans that would assure him protection from future violence and racial discrimination. (Id. ¶¶ 51-52). Plaintiff alleges that not only was there no investigation into the complaints of racial discrimination and violence, but no witnesses were interviewed, the video tapes of the evening were not preserved, and no measures were instituted to address the discrimination among the staff. (Id. ¶ 54). Instead, plaintiff was simply put back on the work schedule. (Id. ¶ 53). Plaintiff alleges that by failing to respond to his requests for protective measures, he was constructively terminated and ended up jobless and with nightmares, depression and anxiety. (Id. ¶¶ 56-59).

Plaintiff asserts two causes of action in his Complaint: (1) a claim for hostile work environment and race discrimination, in violation of Title VII (First Cause of Action); and (2) a claim of hostile work environment and race discrimination, including constructive discharge, in violation of the New York City Human Rights Law (Second Cause of Action). (Id. ¶¶ 60-65).

---

[2] The Complaint contains numerous allegations relating to hate crimes in Howard Beach and the close ties between the Russo family, organized crime, and the New York City Police Department. (Compl. ¶¶ 42-45, n.2).

4

On November 10, 2021, after Robert Russo failed to file an Answer or otherwise appear in the action, the Clerk of Court entered a Certificate of Default against Robert Russo. On December 9, 2021, Joseph M. Labuda of Millman Labuda Law Group, LLC entered a notice of appearance on behalf of Robert Russo and filed a letter motion seeking to vacate the default. (ECF Nos. 21-22). Plaintiff opposed the motion in a letter dated December 13, 2021, arguing that Robert Russo's failure to respond before the entry of default was the product of bad faith and consciously dilatory tactics. (ECF No. 28). Thereafter, plaintiff filed a motion for default judgment and Robert Russo responded by filing a letter motion to strike the motion for default judgment. (ECF Nos. 29, 31). On December 15, 2021, the district judge referred plaintiff's motion for default judgment to the undersigned to prepare a Report and Recommendation. Thereafter, on April 18, 2022, the court also referred Robert Russo's motions to vacate the default and strike plaintiff's motion for default judgment to the undersigned.

On April 19, 2022, this Court directed Robert Russo to file a formal motion to vacate the entry of default that complied with the Local Rules of the Eastern District of New York. On May 13, 2022, Robert Russo filed a formal motion seeking to vacate the certificate of default, which plaintiff responded to on May 20, 2022 in a Declaration submitted by plaintiff's counsel Mr. Stoll. (ECF Nos. 32, 33, 34, 35, 36). On July 1, 2022, the Court held a hearing at which time the parties supplemented their written papers with additional oral argument.

For the reasons set forth below, it is respectfully recommended that plaintiff's motion for default judgment be denied and that Robert Russo's motion to vacate the default be granted.

DISCUSSION

A. Motion To Vacate – Standards

Rule 55(a) of the Federal Rules of Civil Procedure provides that, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that

5

failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process for an entry of default judgment. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. See id. Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. See Fed. R. Civ. P. 55(b).

Pursuant to Rule 55(c), the Court may set aside an entry of default for good cause. The standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the "excusable neglect" standard for setting aside a default judgment by motion pursuant to Rule 60(b). Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981). The main factors for the Court to consider in determining the appropriateness of relieving a party of a default are whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented. Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993); Meehan v. Snow, 652 F.2d at 277. Other relevant equitable factors may also be considered, including, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result. Id. The party seeking relief from an entry of default bears the burden of proof. Aetna Life Ins. Co. v. Licht, No. 03 CV 6764, 2004 WL 2389824, at *3 (S.D.N.Y. Oct. 25, 2004) (quoting In re Martin-Trigona, 763 F.2d 503, 505 n.2 (2d Cir. 1985)). Defaults are not favored, however, and doubts are to be resolved in favor of a trial on the merits. Meehan v. Snow, 652 F.2d at 277.

6

B.  Analysis

In moving to vacate the default, Robert Russo contends that not only was his default not willful, but that he has meritorious defenses and plaintiff cannot demonstrate any prejudice if he is permitted to defend in the action.

1. Willfulness

Willfulness is "more than mere[] neglect or carelessness." Aetna Life Ins. Co. v. Licht, 2004 WL 2389824, at *4 (finding defendant's explanations for letting the case "languish" plausible and acceptable).  A finding of willfulness does not require that the default occurred due to bad faith, but the default must be the "deliberate and intended consequence of movant's actions."  Id. (citing Gucci Am., Inc. v. Gold Ctr. Jewelry, 158 F.3d 631, 635 (2d Cir. 1998)).  "Conduct may be found to be willful where it is egregious, not satisfactorily explained, or is rationalized by flimsy excuse."  Id. at *3 (citing S.E.C. v. McNulty, 137 F.3d 732, 738–39 (2d Cir. 1998)).

Plaintiff argues that Robert Russo's default was willful, asserting that Russo had counsel at the time of the filing of the "underlying matter"[3] and that counsel filed papers on behalf of his codefendants, including his father and the family-owned business.  (Stoll May Decl.[4] ¶ 2). According to the Declaration of plaintiff's counsel, Andrew B. Stoll, Esq., defendant Robert Russo was represented by Jordan Sklar, Esq., of the firm of Babchik & Young, in connection with a filing before the New York City Human Rights Commission ("NYCCHR").  (Stoll April Decl.[5] ¶ 3, Ex. 2 at 9, 10).  Mr. Stoll claims that Jordan Sklar represented both Robert Russo and

---

[3] By "underlying matter," it appears that counsel is referring to the complaint filed by plaintiff with the New York City Commission on Human Rights, which named Robert Russo as a respondent (the "NYCCHR proceeding").
[4] Citations to "Stoll May Decl." refer to the Declaration of Andrew B. Stoll, Esq. In Opposition to Robert "Robbie" Russo's Motion to Vacate the Certificate of Default, dated May 20, 2022, ECF No. 36.
[5] Citations to "Stoll April Decl." refer to Andrew B. Stoll's Declaration in Support of Motion for Default Judgment, filed with this Court on April 11, 2022, ECF No. 30.

the corporate entity in the NYCCHR proceeding. (Id. ¶ 3; Stoll May Decl. ¶ 5). On January 14, 2021, plaintiff requested that the NYCCHR close the case "for administrative cause so that Complainant can file their [sic] claims in court." (Stoll May Decl. ¶ 6). On March 9, 2021, the EEOC issued a Notice of Right to Sue to plaintiff beginning his 90-day period within which to file his federal Complaint. (Id. ¶ 7).

According to Mr. Stoll, he contacted Mr. Sklar on May 17, 2021, and asked if Mr. Sklar's firm would "continue" to represent Russo's, Robert Russo, and Guiseppe Vacca, and if he would accept service on their behalf. (Id. ¶ 8). Although Mr. Sklar confirmed on May 19, 2021 that he continued to represent "Russo's and the two individuals," two days later he informed plaintiff's counsel that Robert Russo was no longer employed by Russo's and that he could not accept service on Robert Russo's behalf. (Id. ¶¶ 9-10; Stoll April Decl. ¶ 4). Mr. Sklar indicated, however, that he was still authorized to accept service on behalf of Russo's and Vacca. (Stoll May Decl. ¶ 10). Moreover, Mr. Sklar informed plaintiff's counsel that, if Robert Russo was served, "as a former employee, I would *offer* to represent him going forward." (Id. ¶ 11 (emphasis added); Stoll April Decl. ¶ 4).

According to plaintiff's counsel, following the filing of this action on May 24, 2021, counsel sent Mr. Sklar copies of the Complaint, the summons, and requests for waivers of service as to all defendants, including Robert Russo. (Stoll May Decl. ¶¶ 13, 14). On June 4, 2021, Mr. Sklar filed waivers of service on behalf of Russo's, Frank Russo, Jr. and Vacca. (Id. ¶ 16). He did not file a waiver of service for Robert Russo. (Id.)

On July 27, 2021, plaintiff was notified that the Milman Labuda Law Group, PLLC had taken over legal representation of Russo's, and on July 30, 2021, Emmanuel Kataev filed a notice of appearance on behalf of all defendants, with the exception of Robert Russo. (Id. ¶¶ 18,

8

19). Thereafter, on August 13, 2021, Mr. Kataev filed a pre-motion conference letter on behalf of all of the defendants except Robert Russo seeking permission to file a motion to dismiss the action. (Id. ¶ 21).

Prior to the change in representation, Mr. Sklar provided plaintiff's counsel with Robert Russo's last known address at 157-37 98th Street, Howard Beach, N.Y. 11414. (Stoll April Decl. ¶ 4). Beginning on June 1, 2021, plaintiff's process server made four attempts to serve Robert Russo at the address provided by Mr. Sklar. (Stoll May Decl. ¶ 15). The process server was advised that the apartment where Russo was supposed to be living was vacant and another tenant indicated that Robert Russo had not yet moved in. (Stoll April Decl., Ex. 3). This was consistent with the process server's own observations. (Id. ¶ 5). On about July 16, 2021, through further investigation, plaintiff realized that Robert Russo was incarcerated, and he was subsequently served at Lakeview Correctional Facility on August 2, 2021. (Stoll May Decl. ¶¶ 17, 20). An affidavit of service was filed with the Court on August 13, 2021. (ECF No. 15).

When no answer was filed on behalf of Robert Russo, plaintiff's counsel filed a request for a Clerk's Certificate of Default, which was entered on November 10, 2021. (Stoll May Decl. ¶¶ 24-25). It was not until December 9, 2021, that Robert Russo, through his counsel, submitted a letter motion to vacate the default, and one day later, on December 10, 2021, the defendants filed their motion to dismiss the Complaint, noting that "Defendant Robert Russo recently retained our office as counsel; he joins in this motion to dismiss." (Id. ¶ 27).

In opposing the motion to vacate the default, Robert Russo, through counsel, explains that his failure to answer was not willful, that he was incarcerated beginning in May 2021 and that he was not released until January 6, 2022. (Kataev Decl.[6] ¶ 4, Ex. B). In support of the

---

[6] Citations to "Kataev Decl." refer to the Declaration of Emmanuel Kataev, Esq. In Support of Defendant Robert Russos' [sic] Motion to Vacate Certificate of Default, filed May 13, 2022, ECF No. 34.

9

motion to vacate, Mr. Kataev has submitted a Declaration to which he attached email correspondence sent and received through the JPay prison e-mail system between "Michael Eusso"[7] and Robert Russo, dated August 13, 2021. (Kataev Decl., Ex. B). In the email exchange, the individual identified as "Michael Eusso" writes as follows:

> Hi Rob
>
> I hope all is well with you. The reason for this email is I'm working on a lawsuit against Russia [sic] that you as well as others have been named in. Since you are no longer and [sic] employee I need to ask you for your permission to be represented by our attorney. Please email me back approving this request. . . .

(Id.) On August 23, 2021, Robert Russo responded with an email to Michael Eusso, also through the JPay system, stating: "yes please you can us laywer [sic] sorry don [sic] have time to write more[.]" (Id.)

It is unclear what happened after that email exchange. However, Mr. Kataev asserts that his firm "required written consent from Robert, himself," to undertake his representation. (Def.'s Mem.[8] at 5). As demonstrated by this email exchange, once notified, Robert "timely provided consent . . . but his consent was not received until months later." (Id.) According to Mr. Kataev's letter motion to vacate the default, dated December 9, 2021, counsel only received written consent from Robert Russo shortly before counsel filed the letter motion to vacate: "Robert Russo was unable to retain counsel while incarcerated, and our office could only retain him if we received his written consent from him to do so—which this office only recently received." (Id. ¶ 26).

---

[7] Although plaintiff's counsel refers to "Michael Eusso" as "Michael Russo" and stated during the July 1, 2022 proceedings that "Eusso" was a typographical error, it is unclear from the correspondence itself whether the reference to "Eusso" is an error or whether it is actually the individual's name and he is unrelated to Robert Russo.
[8] Citations to "Def.'s Mem." refer to Defendant Robert Russo's Memorandum of Law in Support of His Motion to Vacate Certificate of Default, filed with this Court on May 13, 2022, ECF No. 33.

Plaintiff contends that Mr. Russo's explanation as to why there was a delay in his responding to the Complaint is "too little, too late." (Stoll May Decl. at 6). Plaintiff questions why Robert Russo or his correspondent "Michael Russo" have not explained why counsel did not receive Robert's request from August 23, 2021 for representation or why prior counsel, Mr. Sklar, gave plaintiff's counsel a "bad service address" and failed to disclose Robert Russo's incarceration. (Id.) Plaintiff speculates that "defendants consciously worked together to run the clock out on service time limitations." (Id.) Plaintiff further asserts, without citing any basis to support his contention, that even if Mr. Kataev's firm required a written request for representation, Mr. Sklar did not and he "actively represented" Robert Russo when the case was first filed. (Id.) Plaintiff's counsel claims that "[w]e are confident the conclusion will be that Mr. Russo was always aware of this litigation, that he was readily able to retain counsel, and that he and his codefendants, with or without counsel, consciously chose to test our commitment to finding him and pursuing him, and roll the dice with a default." (Id.)

In reply, Robert Russo's counsel notes that plaintiff's arguments ignore Robert Russo's incarceration at the time that the Complaint was filed and Robert was served. (Russo Reply[9] at 2, 3). Defendant's counsel also argues that the fact that Robert Russo contested plaintiff's claims before the NYCCHR "for years" weighs in favor of finding that he did not willfully fail to appear in this matter because it shows that he was invested in resolving the dispute on the merits. (Id. at 2). According to defendants, plaintiff's counsel also fails to acknowledge the fact that Millman Labuda could not represent Robert Russo in the absence of his written consent to representation. (Id. at 3).

---

[9] Citations to "Russo Reply" refer to Defendant Robert Russo's Reply Memorandum of Law in Further Support of His Motion to Vacate Certificate of Default, dated May 27, 2022, ECF No. 37.

11

Having considered the circumstances surrounding the difficulty in serving Mr. Russo and being cognizant of the difficulties in communicating with incarcerated individuals, especially during the Pandemic, the Court finds that the default was not willful. Instead, it appears that, while Robert Russo was represented by Mr. Sklar in the NYCCHR proceedings, those proceedings, and presumably defendant's active involvement in those proceedings, concluded in mid-January 2021. Almost four months then passed before the Complaint in this federal action was filed.

Since Mr. Russo was incarcerated in May 2021, it appears that he was incarcerated at the time that the Complaint was filed on May 24, 2021. Indeed, it was not until May 17, 2021, that plaintiff's counsel first contacted Mr. Sklar to ask whether he would accept service on behalf of the defendants. Although plaintiff accuses Mr. Sklar of deliberately providing a "bad service address" for Mr. Russo and failing to disclose his incarceration, plaintiff has provided no evidence to suggest that Mr. Sklar was aware of Mr. Russo's incarceration or that he acted deliberately to mislead plaintiff in his efforts to effect service on Mr. Russo. Moreover, while plaintiff asserts that Mr. Sklar did not require Mr. Russo's consent to represent him in the federal action, plaintiff has not provided the Court with any basis to conclude that this assertion is based on anything other than a conclusion drawn from Mr. Sklar's prior representation of Mr. Russo in the NYCCHR proceedings.

What is undisputed, however, is that Mr. Kataev's firm did require written consent and, according to counsel, the firm did not receive that consent until shortly before counsel submitted their December 9, 2021 letter seeking to vacate the default. Plaintiff's counsel suggests that Mr. Russo should have explained why counsel did not receive his request for representation in August 2021, after he confirmed in an email with his correspondent, Michael Russo or Eusso,

12

that he wished to be represented by counsel.  However, it is unsurprising that neither Mr. Russo nor his counsel have been able to provide an explanation for the delay.  Given the vagaries of the email communication systems available to incarcerated individuals, it is entirely possible that the email was delayed or unintentionally overlooked before counsel received and read it.

Defendants' counsel argues that "regardless" of why the firm did not receive Robert Russo's consent to representation, it should not be held against Robert Russo as a willful default. (Russo Reply at 2).  Indeed, Robert Russo responded quickly with his consent to the August 13, 2021 email inquiring about his permission to be represented by counsel.  Moreover, counsel filed the letter seeking to vacate the default shortly after receiving the notice of default and Robert Russo's written consent.  These facts suggest that the delay between Robert Russo's obtaining representation in this matter was neither deliberate nor willful.

While plaintiff's counsel may be "confident" that "Mr. Russo was always aware of this litigation, that he was readily able to retain counsel, and that he and his codefendants, with or without counsel, consciously chose to test" plaintiff's "commitment to finding him and pursuing him, and roll the dice with a default" (Stoll May Decl. at 6), the Court is not prepared to reach the same conclusion without evidence of intentional misconduct.  Thus, the Court declines to recommend that the district court hold that Robert Russo's default was willful.

  2. Meritorious Defense

Regardless of whether the defendant's conduct was or was not willful, willfulness is not the only factor to be considered in determining whether to vacate a default; the Court is constrained to consider the two remaining factors:  (1) whether defendant has demonstrated a

13

meritorious defense to the claims;[10] and (2) whether there would be prejudice to plaintiff if the default was vacated.

To demonstrate a sufficiently meritorious defense, "[t]he defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." Aetna Life Ins. Co. v. Licht, 2004 WL 2389824, at *4 (internal citations omitted). In other words, the defendant must show that there is some determination that needs to be made by the factfinder. American Alliance Ins. Co., Ltd. v. Eagle Ins. Co., 92 F.3d 57, 61 (2d Cir. 1996). Although the proffered defense "need not be ultimately persuasive at this stage," id., "defendants cannot simply assert in a conclusory fashion that they would prevail at trial." Aetna Life Ins. Co. v. Licht, 2004 WL 2389824, at *4. In seeking to vacate a default, the defendant "need only 'meet a low threshold' to satisfy [this] factor." MD Produce Corp. v. 231 Food Corp., 304 F.R.D. 107, 110 (E.D.N.Y. 2014) (quoting Allen v. Norman, No. 08 CV 6041, 2012 WL 3525584, at *6 (S.D.N.Y. July 23, 2012), report and recommendation adopted, No. 08 CV 6041, 2012 WL 3526521 (S.D.N.Y. Aug. 15, 2012), aff'd, 548 F. App'x 25 (2d Cir. 2013)).

In this case, Robert Russo has raised several arguments as to why he has meritorious defenses to the claims. First, he categorically denies making race-based comments to plaintiff and he asserts that any issues between plaintiff and him were "work-related," and thus unrelated to plaintiff's race. (Russo Reply at 4; Russo Decl.[11] ¶¶ 7-9). This denial raises an issue of fact to be determined by the factfinder. In addition, the defendants have filed a motion to dismiss the case, asserting not only that plaintiff has failed to state a claim, but that the claims are barred by the statute of limitations. Specifically, defendants argue that plaintiff has failed to state a claim

---

[10] Plaintiff does not address defendant's arguments as to why he has a meritorious defense, focusing mainly on the issue of defendant's willfulness in failing to timely respond to the Complaint.
[11] Citations to "Russo Decl." refer to Robert Russo's declaration, filed with the Court on May 13, 2022, ECF No. 35.

14

because he cannot establish that there was an adverse employment action taken against him. Instead, according to defendants, plaintiff quit his job. (Def.'s Mem. at 8). They also contend that the gravamen of the claim against Robert Russo stems from a single episode in which Robert allegedly engaged in discriminatory behavior against plaintiff, and thus plaintiff's hostile work environment claim is not actionable. (Id.)

Defendants also assert that the plaintiff, by submitting a dismissal for administrative convenience, annulled his election of remedies under the NYCCHR and, even though the Commission was prepared to hear his claims, he decided not to pursue them before the municipal agency and chose instead to file the instant federal lawsuit. (Id.) Defendants argue that, in doing so, he was required to file his federal complaint within the statute of limitations which he did not do. (Id.) These latter two arguments are currently before the district court in connection with the defendants' motion to dismiss. Regardless of the district court's determination of these issues, this Court finds that, if the Complaint survives the motion to dismiss, Robert Russo has raised issues relating to his conduct that would need to be determined by a trier of fact after the completion of discovery.

Accordingly, bearing in mind the Second Circuit's preference that courts decide cases on their merits, Meehan v. Snow, 652 F.2d at 277, the Court finds that, if true, defendant's asserted defenses may be meritorious.

3. Undue Prejudice

Finally, even if defendant's failure to act diligently has delayed the resolution of this case, plaintiff has not asserted that setting aside the notation of default will cause the loss of evidence, create increased difficulties for discovery, or provide greater opportunity for fraud and collusion. See Ward v. Ramkalawan, No. 11 CV 4295, 2013 WL 1149108, at *5 (E.D.N.Y. Feb.

15

11, 2013), report and recommendation adopted, 2013 WL 1149068 (E.D.N.Y. Mar. 19, 2013) (finding that "delay alone is not a sufficient basis for establishing prejudice"). Indeed, given that the other defendants have filed a motion to dismiss on grounds separate and apart from the issues raised by Robert Russo's motion to vacate the default, no discovery has taken place in the case and plaintiff has failed to demonstrate that there are any "obstacles to litigation [that] will result if the default is vacated." Id. Although plaintiff suggests that Robert Russo's participation in the case will further delay resolution of the motion to dismiss, this concern is unfounded given Russo's counsel's representation that Robert Russo joins in the arguments of his codefendants and has not requested an opportunity to engage in further briefing.

Accordingly, the Court finds that granting Robert Russo's motions will not cause undue prejudice to the plaintiff.

## CONCLUSION

The Court finds that, even if defendant's default was willful, which has not been clearly shown, the defendant may have a meritorious defense, and vacatur of the notation of default will not unduly prejudice the plaintiff. Given the Second Circuit's strong preference for disposition on the merits and resolving all doubts in favor of the movant, the Court respectfully recommends that defendant Robert Russo's motions to vacate the entry of default and to strike plaintiff's motion for default judgment be granted.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

16

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail

**SO ORDERED.**
Dated: Brooklyn, New York
August 4, 2022

/s/ Cheryl L. Pollak
Cheryl L. Pollak
Chief United States Magistrate Judge
Eastern District of New York