UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

  KALIEF WILLIAMS,

                        Plaintiff,            **MEMORANDUM & ORDER**
                                              21-CV-2922(EK)(CLP)

                  -against-

  THE RUSSO'S PAYROLL GROUP, INC. dba
  RUSSO'S ON THE BAY; FRANK RUSSO,
  JR.; ROBERT RUSSO, et al.,

                        Defendants.

------------------------------------x
ERIC KOMITEE, United States District Judge:

          Plaintiff Kalief Williams brought this employment

discrimination action against The Russo's Payroll Group, Inc.

(which operates a restaurant called Russo's on the Bay); the

restaurant's owner, Frank Russo, Jr.; and its employees Robert

("Robbie") Russo and Giuseppe Vacca.  Williams alleges claims

under Title VII of the Civil Rights Act of 1964 and the New York

City Human Rights Law ("CHRL").  Defendants have moved to

dismiss on the bases that all of Williams' claims are time-

barred and that his complaint fails to state a claim.  For the

reasons that follow, that motion is granted as to Frank Russo,

Jr. and denied as to the remaining defendants.

          Defendants also seek to strike certain portions of the

complaint under Federal Rule of Civil Procedure 12(f).  That

motion is granted in part and denied in part.

## I.  Background

The following facts are taken from Williams' complaint and are assumed to be true for purposes of the instant motions. Williams was hired in May 2015 to work as a server at Russo's on the Bay,[1] a restaurant located in Howard Beach, Queens.  Compl. ¶¶ 11–12, ECF No. 1.  Williams' factual allegations fall into three general categories.

*First*, Williams alleges that racial slurs were commonplace at Russo's.  Giuseppe ("Joe") Vacca, a maître d' who supervised him, repeatedly called him by the "n-word" to his face, often in front of other staff members and guests.  *Id.* ¶¶ 20–26.  Williams complained to Frank Russo, Jr., the owner, but Frank failed to inhibit this behavior.  *Id.* ¶ 26. Additionally, Vacca and another supervisor often referred derogatorily to black female employees as "ratchet" and made sexual comments about female employees, particularly black female employees.  *Id.* ¶¶ 27–28.

*Second*, Williams recounts a specific incident that took place the evening of September 4, 2016.  *Id.* ¶¶ 32–41. Williams was working during a party under the supervision of manager Robbie Russo, Frank's son.  *Id.* ¶¶ 5, 32.  During the after-party cleanup, Robbie became highly agitated.  He berated

---

[1] For clarity, this Order will refer to the restaurant as "Russo's" and to Frank and Robbie Russo by their first names.

Williams, calling him "lazy" and "stupid" and appending profanity and the n-word to these insults.  *Id.* ¶¶ 33–34.  Frank intervened, asking Robbie to leave the room.  Robbie did so, but only after shattering a walkie-talkie in his rage.  *Id.* ¶ 34.

Shortly thereafter, Frank left the restaurant himself, taking no further steps to protect Williams or other employees from Robbie.  *Id.* ¶ 35.  When Williams ran to the manager's office to return his work jacket and pick up his share of the tip pool, Robbie followed him, cornering Williams and seeking to provoke a physical altercation.  Robbie screamed that he should "break [Williams'] jaw, I should punch you in the face," and physically bumped into him and pushed him, blocking Williams' path to prevent him from leaving.  *Id.* ¶¶ 36–40.  Another employee "pulled Williams back into the manager's office to shield him from Robbie. But Robbie would not leave and kept banging on the closed door to the manager's office, trying to get in and slamming other doors."  *Id.* ¶ 40. Williams eventually called a taxi, and while waiting for it, hid in a locker room. *Id.* ¶ 41.

*Third*, Williams asserts that the restaurant's response to the September 4 episode was inadequate.  *Id.* ¶¶ 46-56.  On September 6, Williams reported the incident to a member of the restaurant's human resources staff, who said she would talk to general manager Phillip Montante.  *Id.* ¶¶ 47-48.  The HR staffer

advised Williams not to file a police report.  *Id.* ¶ 48.  On September 8, Williams met with Montante, who said "[k]ids make mistakes and kids are gonna be kids."  *Id.* ¶¶ 49–50.  When Williams asked if he would have to work with Robbie again, Montante responded that Robbie would return after a brief suspension.  *Id.* ¶ 51.  Russo's then placed Williams back on the work schedule.  *Id.* ¶ 53.

Williams alleges that after the September 4 incident, Robbie "traveled in Europe" and then resumed working at Russo's. *Id.* ¶ 57.  Williams left his employment at Russo's in late September 2016, *id.* ¶ 56; he contends, based on the allegations above, that it became untenable for him to continue at Russo's.

Williams filed a complaint with the New York City Commission on Human Rights (the "City Commission") against Russo's, Robbie, and Vacca (but not Frank) dated October 28, 2016.  City Commission Compl. 8–14, ECF No. 25-1.[2]  He alleged that Russo's created and tolerated a hostile work environment, in violation of the CHRL and Title VII.  *Id.* ¶ 31.  In May 2020, the City Commission set the case for hearing and adjudication. Notice of Probable Cause Determination 1, ECF No. 25-2. However, on January 14, 2021, the City Commission closed the case pursuant to Section 8-113(a) of the City of New York

---

[2] Page numbers in citations refer to ECF pagination rather than the documents' native page numbers.

Administrative Code "for administrative cause so that

Complainant can file their claims in court."  Notice of Closure

1, ECF No. 25-3.  On March 9, 2021, the EEOC issued a right-to-

sue letter because the "Charging Party wishes to pursue [the]

matter in Federal District Court."  Dismissal and Notice of

Rights 1, ECF No. 25-4.

On May 24, 2021, Williams filed the instant suit,

alleging race discrimination in violation of (1) Title VII, 42

U.S.C. §§ 2000e-e17; and (2) Section 8-107(1)(a) of the CHRL,

codified in Chapter 1, Title 8 of the Administrative Code.

Compl. ¶¶ 60-65.

## II.  Legal Standards

On a motion to dismiss under Federal Rule of Civil

Procedure 12(b)(6), "the court's task is to assess the legal

feasibility of the complaint."  *Lynch v. City of New York*, 952

F.3d 67, 75 (2d Cir. 2020).[3]  In doing so, the Court "must take

the facts alleged in the complaint as true, drawing all

reasonable inferences in [the plaintiff's] favor."  *In re NYSE

Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007).  To

survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to "state a claim to relief

---

[3] Unless otherwise noted, when quoting judicial decisions this order
accepts all alterations and omits all citations, footnotes, and internal
quotation marks.

that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### III.  Discussion

### A.  Motion to Dismiss

Defendants make three arguments in support of their motion to dismiss.  First, Defendants note that Williams failed to name Frank in his City Commission complaint.  This omission prevented any tolling of the statute of limitations as to Frank, and the CHRL claim against Frank is dismissed.  Second, Defendants argue that Williams' suit against the remaining defendants was filed out of time because he had voluntarily dismissed his complaint with the City Commission, which ended the tolling of the statute of limitations under New York law. That argument fails; as explained below, Williams' decision to voluntarily dismiss his City complaint neither vitiated the tolling under the procedural provisions of the CHRL nor impacted Williams' deadline to bring Title VII claims.  Third, Defendants argue that Williams' complaint fails to adequately allege a hostile work environment.  But given the factual allegations set

forth in his complaint, Williams has clearly pled the elements

of that claim.[4]

>    1.   Williams' CHRL Claims Are Timely as to All Defendants
>         Except Frank Russo, Jr.

>    a.  The CHRL's Tolling Mechanism

Williams sued under Section 8-107(1)(a) of the New

York City Administrative Code, which makes it an "unlawful

discriminatory practice":

> For an employer or an employee or agent thereof,
> because of the actual or perceived . . . race . . . of
> any person . . .

>> (2) To refuse to hire or employ or to bar or to
>> discharge from employment such person; or

>> (3) To discriminate against such person in
>> compensation or in terms, conditions or
>> privileges of employment.

N.Y.C. Admin. Code § 8-107(1)(a).

The procedures for such a claim are governed by

Section 8-502.  Section 8-502(a) provides that:

> Except as otherwise provided by law, any person
> claiming to be a person aggrieved by an unlawful
> discriminatory practice as defined in chapter 1 [which
> includes Section 8-107] . . . shall have a cause of
> action in any court of competent jurisdiction . . . ,
> unless such person has filed a complaint with the

---

[4] Williams' Title VII claim applies only against Russo's.  *See Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012) ("Employers, not individuals, are liable under Title VII.").  The city-law claim is asserted against Frank, Robbie, and Vacca as well.  *See, e.g., Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 658 (E.D.N.Y. 2015) ("Individual employees may be held liable under NYCHRL if they actually participated in the conduct giving rise to the discrimination claim.").

>     [City Commission] . . . with respect to such alleged
>     unlawful discriminatory practice . . .

*Id.* § 8-502(a).  This choice of forum between the City

Commission and the courts has been described as an "election of

remedies"; a complainant may, generally speaking, pursue only

one.  *Isbell v. City of New York*, 316 F. Supp. 3d 571, 583

(S.D.N.Y. 2018).  As discussed below, however, a complainant who

initially chooses the City Commission may later reverse that

choice.

        Generally, "a civil action commenced under [Section 8-

502] must be commenced within three years after the alleged

unlawful discriminatory practice . . . ."  N.Y.C. Admin. Code

§ 8-502(d).  Here, Williams filed this action more than three

years after the alleged discrimination ended in September 2016,

when his employment ceased.  Compl. ¶ 56.  Thus, his claims are

timely only if the statute of limitations was tolled under the

second sentence of Section 8-502(d), which provides that "[u]pon

the filing of a complaint with the [City Commission] . . . and

during the pendency of such complaint . . . , [the] three-year

limitations period shall be tolled."  N.Y.C. Admin. Code § 8-

502(d).  Williams argues that the statute was tolled while his

complaint was pending before the City Commission.

b.  The CHRL Claim Against Frank Russo, Jr. is Untimely

As Defendants note, "Williams filed a Verified Complaint with the [City Commission] solely against Russo's, [Robbie], and Vacca" — not Frank — "for violations of the" CHRL. Defs. Mem. 15.  Frank's exclusion from the City Commission complaint renders the CHRL claims against him untimely. Because Williams filed CHRL claims against Frank more than three years after the end of the alleged discrimination, under Section 8-502(d), Williams must establish that a complaint against Russo's, Robbie, and Vacca is, under the statute, a "complaint" the "pendency" of which tolls the statute of limitations for CHRL claims against Frank. N.Y.C. Admin. Code § 8-502(d).  He cannot.

On one hand, in the context of Title VII claims, failure to name a party in an administrative complaint does not necessarily preclude suing that party in federal court; the federal case may proceed if the party administratively charged and the party sued share an "identity of interest." *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991). On the other hand, courts have been particularly loath to apply the identity of interest exception when, as here, the plaintiff "does not claim that his counsel was unversed in the law." *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 390 (S.D.N.Y. 2002).  And neither the Second Circuit nor any New

York state court has held that the identity of interest exception applies to the CHRL — which, unlike Title VII, provides for individual liability.  *See Dillon*, 85 F. Supp. 3d at 658.  In the absence of such authority, I decline to invoke that doctrine here.  *See McCarthy v. Volkswagen of Am., Inc.*, 435 N.E.2d 1072, 1072 (N.Y. 1982) (holding that "tolling provisions should not readily be given an expansive interpretation tending to undermine the basic purposes behind the Statutes of Limitation.").

Because Williams filed no City Commission complaint against Frank, the CHRL claim against Frank was not tolled, and it is dismissed as untimely.

> c.   Williams' CHRL Claims Against Russo's,
>      Robbie Russo, and Joe Vacca Are Timely

Williams likewise argues that the statute of limitations on his CHRL claims against Russo's, Robbie, and Vacca was tolled during the pendency of his complaint against those defendants.  Williams must contend with Section 8-502(b), which states:

> Notwithstanding any inconsistent provision of subdivision a of this section, where a complaint filed with the city commission on human rights or the state division on human rights is dismissed by the city commission on human rights pursuant to subdivisions a, b or c of section 8-113 . . . an aggrieved person shall *maintain all rights* to commence a civil action pursuant to this chapter *as if no such complaint had been filed*.

N.Y.C. Admin. Code § 8-502(b) (emphases added).  As discussed,
the City Commission dismissed Williams' complaint under Section
8-113(a), so Section 8-502(b) applies.  Relying on the last
sentence of the latter section, Defendants argue that Williams'
voluntary dismissal "operates as if no complaint was ever filed
with the [City Commission] in the first place," and therefore
the full period of tolling evaporated upon that dismissal.
Defs.' Mem. Law Supp. Mot. Dismiss and Strike ("Defs. Mem.") 17–
18, ECF No. 24.  Defendants thus read "all rights" to include
only the right to "commence[] [a lawsuit] within three years
after the alleged unlawful discriminatory practice."  N.Y.C.
Admin. Code § 8-502(d); *see* Defs. Mem. 17-18.

       i.  *Strusman v. NYU Langone*

     This exact position was rejected by the only case that
appears to have squarely addressed the issue, *Strusman v. NYU
Langone Hospitals*, No. 19-CV-9450, 2020 WL 3415111 (S.D.N.Y.
June 22, 2020).  In that case, plaintiff Strusman, like
Williams, made Title VII and CHRL employment-discrimination
claims.  *Id.* at *1.  Strusman had previously submitted a
complaint to the New York State Division of Human Rights, but
the State Division later dismissed the case for administrative
convenience because Strusman wanted to pursue federal remedies.
*Id.*  Under Section 8-502, that placed Strusman in the exact same
position as Williams; Strusman's city-law statute of limitations

also would have run unless it were tolled during the time the State Division complaint was pending.  2020 WL 3415111, at *3.[5] Thus, the court considered the same question presented here: does the dismissal of a City or State complaint under Section 8-502(b) vitiate the period of tolling under the CHRL?

The court concluded that it did not, for two reasons that I find persuasive (if not irrefutable).  *First*, the court observed that subsection (b), which contains the provision alleged to vitiate tolling, begins with the phrase "[n]otwithstanding any inconsistent provision of *subdivision a of this section.*"  *Id.* at *4 (emphasis added) (quoting N.Y.C. Admin. Code § 8-502(b)).  That language indicates that subsection (b) functions "to qualify the otherwise harsh rule of" subsection (a) — that is, the rule that once a complainant seeks administrative relief, he can no longer pursue judicial relief.  *Id.*  Subsection (b) therefore says nothing about the statute of limitations or tolling.  In contrast, the court observed that subsection (d) is the statute-of-limitations

---

[5] N.Y.C. Admin. Code § 8-502(b) provides for the same tolling during the pendency of both city and state complaints.  It reads: "Notwithstanding any inconsistent provision of [Section 8-502(a)], where a complaint filed with the city commission on human rights *or the state division on human rights* is dismissed by the city commission on human rights pursuant to subdivisions a, b or c of section 8-113, *or by the state division of human rights pursuant to subdivision 9 of section 297 of the executive law . . . for administrative convenience . . .* , an aggrieved person shall maintain all rights to commence a civil action pursuant to this chapter as if no such complaint had been filed." (emphasis added).

provision, including the actual "tolling provision," which it found "broadly worded and unconditional," with "language admit[ting] no exception."  *Id.* at *5.

Moreover, the court contrasted subsection (b) with subsection (e), which is keyed to a section rather than a subsection:

> Notwithstanding any inconsistent provision *of this section*, where a complaint filed with the city commission on human rights or state division of human rights is dismissed for administrative convenience and such dismissal is due to the complainant's malfeasance, misfeasance or recalcitrance, the three year limitation period on commencing a civil action pursuant to this section shall not be tolled. Unwillingness to accept a reasonable proposed conciliation agreement shall not be considered malfeasance, misfeasance or recalcitrance.

N.Y.C. Admin. Code § 8-502(e) (emphasis added).  The reference to "this section" (rather than subsection) is important: as the court observed, subsection (e) applies to the entirety of Section 8-502.  2020 WL 3415111, at *5.  Meanwhile, as discussed, subsection (b) qualifies *sub*section (a), the election-of-remedies provision, but not subsection (d), the statute-of-limitations provision.  *Id.*  This difference in language "demonstrates that [the Administrative Code's drafters] knew how to deny the benefit of tolling when they wanted to do so."  *Id.* at *6.

*Second*, the court argued that reading subsection (b) to reverse the tolling "would render Section 8-502(e)

surplusage." *Id.* at *6; *see generally Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute.").  That is because subsection (e) covers situations that are a strict subset of subsection (b).  *Strusman*, 2020 WL 3415111, at *6.  Subsection (b), which incorporates subsections (a)–(c) of Section 8-113, applies when the City Commission "dismiss[es] a complaint for administrative convenience" for various reasons, including that the complainant cannot be located, fails to "accept a reasonable proposed conciliation agreement," or (as in Williams' and Strusman's cases) "requests such dismissal."  N.Y.C. Admin. Code §§ 8-113(a)(1), (4), (6), 8-502(b).  But subsection (e) applies only where the administrative-convenience dismissal involves "malfeasance, misfeasance or recalcitrance."  Thus, it would have been unnecessary to include subsection (e) if subsection (b) worked the way the defendant in *Strusman* (and Defendants here) suggest.

Based on these reasons, the court in *Strusman* concluded that the interpretation of Section 8-502(b) that the defendants urged, and which Defendants advocate for here, "is inconsistent with the text of the Administrative Code."  2020 WL 3415111, at *4.  I concur with *Strusman*'s reasoning and conclusion.

ii.  Defendants' Authorities

Defendants argue that "the *Strusman* holding is flawed," that "no other court has adopted [*Strusman*'s] reasoning," and that the case took an impermissibly non-textualist reading.  Defs. Mem. 18–19; Defs.' Reply Mem. Law ("Defs. Reply") 8, ECF No. 27.  But the number of cases that have addressed this issue at all is small (and, as discussed below, no court reading this particular provision has reached a contrary conclusion).  Moreover, *Strusman*'s conclusion, contrary to the defense position, is grounded in the plain meaning of the statute and supported by familiar canons of construction.

That leaves Defendants arguing that the tolling provisions of the CHRL and the *State* Human Rights Law are "sufficiently similar" to one another and that two cases involving the SHRL should govern.  Defs. Mem. 17–18 (citing *Sprott v. N.Y.C. Housing Auth.*, No. 94-CV-3818, 1999 WL 1206678 (S.D.N.Y. Dec. 16, 1999); *Henderson v. Town of Van Buren*, 789 N.Y.S.2d 355 (App. Div. 4th Dep't 2005) (mem.)).  But, unlike the CHRL, the SHRL provides explicitly for the vitiation of tolling.  *See* N.Y. Exec. Law § 297.9 ("[I]f a complaint is so annulled by the division, upon the request of the party bringing such complaint before the division, such party's rights to bring such cause of action before a court of appropriate jurisdiction shall be limited by the statute of limitations in effect in such

court at the time the complaint was initially filed with the division."); *Sprott*, 1999 WL 1206678, at *3; *Henderson*, 789 N.Y.S.2d at 356.[6]

Accordingly, Williams' CHRL claims against Russo's, Robbie, and Vacca are not time-barred.

d.   Williams' Title VII Claim is Timely

Defendants also contend that Williams' Title VII claim is untimely because Williams "merely piggybacked his federal claims onto" his City Commission complaint.  Defs. Mem. 18.  But this argument misses the point: irrespective of whether Williams' CHRL claims were tolled or not, Title VII contains its own time limitations.

When Williams filed his complaint with the City Commission in the fall of 2016,[7] it was also "dual-filed" with the EEOC pursuant to a work-sharing agreement between the two agencies.  *Isaacson v. N.Y. Organ Donor Network*, No. 08-CV-9545,

---

[6] Three other cases that Defendants cite address only the election of remedies, not the statute of limitations, and — contrary to Defendants' characterization of these cases — none suggests that a dismissal for administrative convenience implicates the election of remedies doctrine.  *See* Defs. Mem. 19–20 & n.7 (citing *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 157 n.1 (2d Cir. 2017); *Moodie v. Fed. Reserve Bank of N.Y.*, 58 F.3d 879, 882 (2d Cir. 1995); *Jackson v. City of New York*, No. 10-CV-7889, 2013 WL 541510, at *5 (S.D.N.Y. Feb. 14, 2013)).

[7] The copy of the City Commission complaint attached to Defendants' brief is notarized as of October 28, 2016, but it is the copy the City Commission sent to Defendants on November 3, 2016.

2009 WL 9119999, at *2 n.2 (S.D.N.Y. Dec. 30, 2009).[8]  As Defendants recognize, that date of filing therefore "is the date for filing with the EEOC for purposes of the [Title VII] statute of limitations." *Morales v. City of N.Y. Dep't of Juv. Just.*, No. 10-CV-0829, 2012 WL 180879, at *4 (S.D.N.Y. Jan. 23, 2012); Defs. Mem. 18 n.4.

"In New York, a Title VII complainant has 300 days from the date of the alleged unlawful employment practice to institute proceedings with the [City Commission] . . . ." *Parks v. N.Y.C. Dep't of Corr.*, 253 F. App'x 141, 143 (2d Cir. 2007); *see* 42 U.S.C. § 2000e-5(e)(1).  As Williams alleged discrimination as late as September 2016, Williams appropriately filed his complaint in the fall of 2016.

Title VII also requires that a plaintiff sue within 90 days of receiving a right-to-sue letter from the EEOC.  42 U.S.C. § 2000e-5(f)(1); *Sherlock v. Montefiore Med. Ctr.*, 84

---

[8] *Strusman*, in conflict with *Isaacson*, states that the City Commission does not have such a work-sharing agreement with the EEOC.  *Strusman*, 2020 WL 3415111, at *7; *see also Nixon v. TWC Admin. LLC*, No. 16-CY-6456, 2017 WL 4712420, at *3 (S.D.N.Y. Sept. 27, 2017) (same).  Williams did not allege anything about the work-sharing agreement, though he alleged his complaint was "dual-fil[ed]" with the EEOC and the City Commission.  Compl. ¶ 8. However, Defendants submitted with their motion a copy of Williams' City Commission complaint, as relayed to the defendants on November 3, 2016.  ECF No. 25-1.  His City Commission complaint contains an EEOC charge number, and the charge number is dated fiscal 2017 (i.e., dated between October 2016 and September 2017, as would be expected for a filing between October 28 and November 3 of 2016).  The EEOC charge is "integral" to Williams' complaint, *see* Compl. ¶ 8, and can therefore be considered on this 12(b)(6) motion, *see Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).  Thus, I accept that the City Commission complaint was indeed cross-filed with the EEOC in the fall of 2016.

F.3d 522, 525 (2d Cir. 1996).  As noted, the EEOC issued

Williams a right-to-sue letter on March 9, 2021, and Williams

filed his complaint on May 24, 2021.  The Title VII claim is

thus timely.

     2.  <u>Williams States a Hostile Work Environment Claim</u>

       In his complaint, Williams alleged that he was

"subjected to a hostile work environment and discriminated

against in the terms and conditions of his employment, including

by constructive discharge, because of his race," in violation of

Title VII.  Compl. ¶ 61.  He is now pursuing only the hostile

work environment claim.[9]  A hostile work environment claim

requires the plaintiff to plead facts tending to show that the

conduct at issue:

> (1) is objectively severe or pervasive — that is,
> creates an environment that a reasonable person would
> find hostile or abusive; (2) creates an environment
> that the plaintiff subjectively perceives as hostile

---

[9] In his memorandum of law in opposition to the defendants' motion to
dismiss, Williams stated that while his complaint references "constructive
discharge," *e.g.* Compl. ¶ 61, Williams is relying solely on a hostile work
environment theory of discrimination and is not claiming any adverse
employment action.  Ptf.'s Mem. Opp. 9.  Following oral argument, I directed
the parties to file supplemental briefing regarding the law of "constructive
discharge."  Order, ECF No. 38; *see* Ptfs.' Letter Br., ECF No. 39.; Defs.'
Letter Br., ECF No. 40.  In his supplemental letter brief, Williams wrote
that "his constructive discharge, whether considered as a free-standing claim
under his Title VII cause of action, or as an avenue to increased damages
under his hostile work environment claim, is also readily supported by the
pleadings."  Ptfs.' Letter Br. 4.  Nevertheless, the complaint as written
asserts only a hostile work environment theory of liability, and Williams may
not "amend [his] Complaint through claims raised solely in a brief" —
especially after expressly disclaiming the relevant cause of action
initially.  *Ingber v. Truffleman*, No. 13-CV-1207, 2013 WL 5728254, at *2
(E.D.N.Y. Oct. 22, 2013).

> or abusive; and (3) creates such an environment
> because of the plaintiff's [protected characteristic].

*Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). "[A] work environment's hostility should be assessed based on the totality of the circumstances." *Id.* Relevant factors "include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Id.*

The Second Circuit has "cautioned against setting the bar too high, noting that while a mild, isolated incident does not make a work environment hostile, the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse*." *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003). It is true that, "as a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002). But it is also settled that "even a single act can meet the threshold if, by itself, it can and does work a transformation of the plaintiff's workplace." *Id.*

Williams' allegations easily clear this bar. He alleges numerous instances where racial slurs were directed at

him.  He alleges that Russo's "[e]mployees, especially managers, used the word 'n----r' constantly at Russo's, including when they addressed or described Williams," and "used these slurs in front of the entire staff and sometimes even guests."  Compl. ¶ 20.  He specifically alleges that Vacca deployed the slur "multiple times a week, including in front of others," even after Williams asked him to stop.  *Id.* ¶¶ 21–22.  These allegations alone are likely sufficient.  "Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet . . . by a supervisor in the presence of his subordinates."  *Rodgers v. W.-S. Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993), *quoted by Richardson v. N.Y. St. Dep't of Corr. Serv.*, 180 F.3d 426, 439 (2d Cir. 1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

But Williams alleges substantially more, including especially Robbie's behavior on September 4.  As noted above, Williams alleges that that night, Robbie accosted him with racial slurs before smashing a walkie-talkie.  Compl. ¶¶ 33–34. Robbie then "cornered" Williams in the basement and, among other things, menaced him physically, and blocked his path to prevent him from leaving.  *Id.* ¶¶ 37–38.  After Williams managed to

leave the room, Robbie "kept pushing Williams from behind."  *Id.*
¶ 39.

"Racially motivated physical threats and assaults are
the most egregious form of workplace harassment. . . .  [W]hen
conduct in the workplace is physically threatening to an
individual because of his membership in a protected class, that
conduct will almost always create a hostile work environment."
*Williams v. N.Y.C. Hous. Auth.*, 154 F. Supp. 2d 820, 825
(S.D.N.Y. 2001) (surveying Second Circuit cases); *see also Rasmy
v. Marriott Int'l, Inc.*, 952 F.3d 379, 390 (2d Cir. 2020)
("[T]he presence of physical threats . . . [is] relevant to
finding a hostile work environment . . . .").

Defendants argue that Williams' complaint is
insufficient because, among other things, he failed to allege
the specific dates on which racial slurs were deployed.  Defs.
Reply 13.  But specific dates are not required, especially at
the motion-to-dismiss stage.  *See Bonano v. Southside United
Hous. Dev. Corp.*, 363 F. Supp. 2d 559, 565 (E.D.N.Y. 2005) (in a
Title VII employment-discrimination case, "plaintiff is not
required to plead specific dates of discrimination"); *cf. Torres
v. Pisano*, 116 F.3d 625, 631 (2d Cir. 1997) ("If a jury were to
credit [a plaintiff's] general allegations of constant abuse,
which were confirmed by her coworkers, it could reasonably find
pervasive harassment, even in the absence of specific details

about each incident."); *Valleriani v. Route 390 Nissan LLC*, 41 F. Supp. 3d 307, 316 (W.D.N.Y. 2014) (where a plaintiff "plainly testified" at her deposition "that the comments permeated the workplace and were made 'all of the time,'" "disputed issues of fact concerning a hostile work environment" existed).

Defendants cite two cases to support their argument that Williams needs to allege specific dates in the complaint: *Porter v. Half Hollow Hills Cent. Sch. Dist.*, No. 17-CV-5006, 2019 WL 4696384 (E.D.N.Y. Sept. 26, 2019), and *Sloth v. Constellation Brands, Inc.*, 883 F. Supp. 2d 359 (W.D.N.Y. 2012). But neither is helpful to them. *Porter* held that "[w]ithout temporal markers, the alleged incidents appear as isolated events and not part of a continuous effort of any sort." 2019 WL 4696384, at *6. But those incidents involved much less severe allegations, "[n]one of [which], taken either separately or a whole, [came] remotely close to plausible allegations of pervasive, severe behavior rising to the level of a hostile work environment." *Id.* Accordingly, the court needed more information on their frequency and regularity. And the only allegation of racial discrimination in *Sloth* was that the plaintiff was, at some unspecified time, "treated differently" in an unspecified manner "than similarly situated coworkers of a different race." 883 F. Supp. 2d at 372.

Because Williams adequately pleaded a hostile work environment claim, Defendants' motion to dismiss that claim is denied with respect to Russo's, Robbie, and Vacca.[10]

## B.   Motion to Strike

Defendants also move to strike certain allegations in the complaint under Rule 12(f).  Defs. Mem. 27-29.  These include assertions regarding the racial history of Howard Beach (going back to 1985); an event from Williams' adolescence, not involving any of the defendants, in which he and a group of friends were chased by "white boys with knives and sticks"; rumors of the Russo family's organized-crime and NYPD ties; and allegations that the TVs at Russo's were often tuned to coverage of rallies by candidate or President Trump.  Compl. ¶¶ 31, 42-45.

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not

---

[10] Claims under the CHRL are reviewed "more liberally" than their federal and state counterparts.  *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009); *see also Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) ("The standard for maintaining a hostile work environment claim is lower under the [CHRL].").  Accordingly, Defendants' motion to dismiss that claim is also denied.

necessary to resolve, the disputed issues." *Lynch v. Southampton Animal Shelter Found. Inc.*, 278 F.R.D. 55, 63 (E.D.N.Y. 2011). "In deciding whether to strike a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). Generally speaking, "motions to strike are viewed with disfavor and infrequently granted." *In re Merrill Lynch & Co., Inc. Rsch. Reps. Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003).

Some of Williams' allegations are properly stricken, despite this high bar, as they are truly peripheral. It is highly unlikely that evidence of a threatening episode in Williams' childhood — an episode that he does not allege any defendant played a role in (or even knew about) — will be admissible. The same is true for allegations of the Russos' rumored ties to organized crime and the NYPD; absent some concrete evidence (and some connection to the hostile work environment claim, which has not been drawn), these rumors will likely be excluded. Accordingly, paragraphs 42 and 44 are stricken. *Cf. Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 512 (S.D.N.Y. 2013) (striking as "immaterial and irrelevant" a defendant employer's "alleged mistreatment of customers" in a

wage-and-hour case not brought on behalf of any customer).  The remaining requests to strike are denied for the time being, without prejudice to renew after discovery concludes.

### IV.  Conclusion

For these reasons, Defendants' motion to dismiss is granted in part; the CHRL claim against Frank is dismissed.  The motion to dismiss is otherwise denied.  Defendants' motion to strike is granted in part and denied in part; Paragraphs 42 and 44 are stricken from the complaint.  The parties are referred to Judge Pollak for pretrial supervision.

SO ORDERED.

/s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:    April 21, 2023
          Brooklyn, New York