UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KALIF WILLIAMS,

                         Plaintiff,

        -against-                                   **ORDER**
                                                                   21 CV 2922 (EK) (CLP)
THE RUSSO'S PAYROLL GROUP, INC., *et al.*,

                        Defendants.
------------------------------------------------------------X
**POLLAK**, United States Magistrate Judge:

       On May 24, 2021, Kalif Williams ("plaintiff") commenced this action against defendants The Russo's Payroll Group, Inc. ("Russo's"), Frank Russo, Jr.,[1] Robert ("Robbie") Russo,[2] and Giuseppe Joe Vacca (collectively, "defendants"), alleging claims of race discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., Title 8 of the Administrative Code of the City of New York, and Section 8-107(1)(a) of the New York City Human Rights Law. Currently pending before this Court are three motions filed by the parties concerning depositions.

       For the reasons set forth below: 1) defendants' motion to compel is GRANTED with respect to the request that plaintiff be required to appear for an in-person deposition and DENIED with respect to the request that plaintiff be required to produce Danielle Silva for deposition; 2) plaintiff's motion to compel the depositions of non-party witnesses Frank Russo,

---

[1] Frank Russo, Jr. was dismissed as a defendant on April 21, 2023.
[2] On April 17, 2024, defendants filed a notice of death with respect to Robbie Russo. (ECF No. 67). After failing to file a substitution motion within the time provided under Rule 25(a)(1) of the Federal Rules of Civil Procedure, plaintiff was ordered to show cause by August 13, 2024, why Robbie Russo should not be dismissed from this action. On August 8, 2024, plaintiff filed a letter indicating that they did not intend to file a substitution motion, and this Court subsequently recommended that the district court dismiss plaintiff's claims against Robbie Russo. (See ECF No. 68; Report and Recommendation, dated August 8, 2024).

1

Jr. and Joanna Russo is GRANTED; and (3) plaintiff's motion to compel the deposition of non-party witness Phillip Montante is GRANTED.

## DISCUSSION

I. Defendants' Letter Motion

By letter motion dated January 12, 2024, defendants seek to compel the in-person deposition of plaintiff due to his failure to appear as noticed on January 3, 2024, and pursuant to this Court's Order dated November 28, 2023 ("Defs.' Mot."). (ECF No. 55). Defendants also seek to compel plaintiff to produce non-party witness Danielle Silva ("Ms. Silva") for deposition, or provide contact information for Ms. Silva, and award sanctions as appropriate. (Id. at 1). The Court addresses each request below.

A. Plaintiff's Failure to Appear for His Deposition

Pursuant to an Order dated November 28, 2023, the parties were required to confer on deposition dates and to complete those depositions by January 15, 2024. (ECF No. 52). Defendants subsequently confirmed the following deposition dates: Robert Russo on January 4, 2024, plaintiff on January 12, 2024, and Giuseppe Vacca on January 15, 2024. (ECF No. 53). According to defendants, Mr. Russo's deposition proceeded on January 4, 2024, but a dispute arose as to whether plaintiff's deposition would proceed in person. (Defs.' Mot. at 2). Although defendants sent plaintiff's counsel a letter on January 4, 2024, confirming the date and location of plaintiff's anticipated in-person deposition, defendants contend that it was not until January 10, 2024, during a meet and confer between counsel, that defendants were informed plaintiff would not appear for the January 12, 2024, deposition because "he no longer lives in New York state." (Id.) According to defendants, counsel indicated that plaintiff resides in the "South" and would not agree to an in-person deposition for this reason and because of his fear that Robert

2

Russo would be there. (Id.) As a result of plaintiff's failure to appear, defendants incurred a $200 cancellation fee from the court reporter. (Id.)

In response to defendants' Motion, plaintiff submitted a letter dated January 22, 2024, seeking a protective order mandating that defendants conduct a remote deposition of plaintiff. (ECF No. 57). Plaintiff contends that although the deposition of plaintiff was scheduled "a month earlier," it was not until January 3, 2024, that defendants indicated that they wanted to take plaintiff's deposition in person. (Id. at 3). Then, on Sunday, January 7, 2024, when plaintiff's counsel sought to schedule a meet and confer, it took defendants until Wednesday to respond. (Id.) According to plaintiff, defendants' reason for wanting an in-person deposition was because defendants' counsel, "Joe [Labuda,] always does it like this," and they wanted to avoid technical issues and be able to observe plaintiff's demeanor. (Id.) Plaintiff explained that he had moved "South" because of the "racial attack" that is the subject of this lawsuit and that he therefore "was afraid to return." (Id.) Plaintiff contends that by the time the parties had made attempts to resolve the dispute, it was too late to ask the Court to intervene. (Id.)

It is well established that "the party noticing the deposition usually has the right to choose the location." Stapleton v. Prince Carpentry, Inc., No. 22 CV 4044, 2023 WL 1785547, at *1 (E.D.N.Y. Feb. 6, 2023) (quoting Buzzeo v. Board of Ed., 178 F.R.D. 390, 392 (E.D.N.Y. 1998)). Moreover, while there is "no absolute rule as to the location of the deposition of a nonresident plaintiff," there "is a general presumption that a plaintiff who chooses a particular forum should be prepared to be deposed in that forum." Connell v. City of New York, 230 F. Supp. 2d 432, 436 (S.D.N.Y. 2002) (citing Clem v. Allied Van Lines Int'l Corp., 102 F.R.D. 938, 939 (S.D.N.Y. 1984)). However, the Court has the discretion to designate the location of depositions. See Stapleton v. Prince Carpentry, Inc., 2023 WL 1785547, at *1 (citing JB

Aviation, LLC v. R Aviation Charter Servs., LLC, No. 14 CV 5175, 2016 WL 4444794, at *4 (E.D.N.Y. Aug. 23, 2016)); Fed. R. Civ. P. 30(b)(4) (providing that "[t]he parties may stipulate – or the court may on motion order – that a deposition be taken by telephone or other remote means").[3]

When the parties disagree as to the location of the deposition, as in this case, the Court must "balance claims of prejudice and those of hardship . . . and conduct a careful weighing of the relevant facts."  Stapleton v. Prince Carpentry, Inc., 2023 WL 1785547, at *1 (quoting Rouviere v. Depuy Orthopaedics, Inc., 471 F. Supp. 3d 571, 574 (S.D.N.Y. 2020)); see also Estate of Gerasimenko v. Cape Wind Trading Co., 272 F.R.D. 385, 387 (S.D.N.Y. 2011) (stating that courts must weigh the relevant facts to "achieve a balance between claims of prejudice and those of hardship").  When a nonresident deponent can show financial hardship likely to result from attending an in-person deposition at the place selected by the deposing party, courts have allowed their depositions to proceed remotely.  Connell v. City of New York, 230 F. Supp. 2d at 436–37 (ordering the remote deposition of a non-resident *pro se* plaintiff, who demonstrated financial hardship in having to come to New York for deposition and who had no choice but to file the lawsuit in New York).  However, the ultimate decision is left to the discretion of the Court.  Stephens v. 1199 SEIU, No. 07 CV 596, 2011 WL 2940490, at *1 (E.D.N.Y. July 19, 2011).

Plaintiff contends that even prior to the COVID Pandemic, courts, including the undersigned, have found that "depositions conducted remotely are a valid, reliable, efficient and

---

[3] Local Civil Rule 30.2 further provides that "[t]he motion of a party to take a deposition of an adverse party by telephone or other remote means will presumptively be granted."  Here, however, the presumption set out in the Local Rule does not apply because the party seeking to take the deposition—defendants—have objected to a remote deposition and instead seek to take the in-person deposition of the plaintiff in New York, where plaintiff chose to commence this action.  See also JB Aviation, LLC v. R Aviation Charter Servs., LLC, 2016 WL 4444794, at *4 (noting that the "general presumption that a non-resident *defendant's* deposition will be held where he or she resides or works" applies only when "the *defendant* resides outside the forum" (emphasis added)).

4

cost-effective method of obtaining required discovery without needless expense." (ECF No. 57 at 3 (quoting Uni-Systems, LLC v. U.S. Tennis Ass'n, No. 17 CV 147, 2018 WL 1335354, at *4 (E.D.N.Y. Mar. 15, 2018) (citing cases))). Citing this Court's decision in Uni-Systems, plaintiff argues that caselaw favors remote depositions. (ECF No. 57 at 3–4). However, in Uni-Systems, the witness at issue was a non-party Rule 30(b)(6) witness who suffered from a chronic health condition and was too ill and frail to travel. Rather than grant the motion of the various corporate defendants to shift to plaintiff the costs of travel to Miami where the witness was located, the Court suggested, but did not order, the option of a remote deposition.[4] Moreover, while it is true that courts generally ordered depositions to proceed remotely during the Pandemic, see, e.g., Joffe v. King & Spalding, No. 17 CV 3392, 2020 WL 3453452, at *6 (S.D.N.Y. June 24, 2020) (denying plaintiff's request to depose several non-party witnesses in person in light of the risk of the significant risk of exposure and infection), here plaintiff's concerns do not relate to any fear of exposure to disease that might occur during an in-person deposition.

To the extent that defendants have argued that they prefer an in-person deposition to a remote one because they are better able to judge the witness' demeanor and to avoid technical difficulties, plaintiff points out that defendants availed themselves of remote depositions when plaintiff conducted depositions, and he cites cases that find arguments based on demeanor and technology to be unpersuasive. (ECF No. 57 at 5). In response, defendants note that in serving his notices for deposition, it was plaintiff who opted to conduct the depositions of defendants'

---

[4] The other cases cited by plaintiff involved witnesses who were located abroad and their presence for testimony at trial could not be obtained. See City of Almaty v. Ablyazov, No. 15 CV 5345, 2022 WL 17156623 (S.D.N.Y. Nov. 21, 2022); United States v. Ahmed, No. 12 CR 661, 2014 WL 7399298 (E.D.N.Y. Dec. 30, 2014) (relying on Fed. R. Crim. P. 15(c)(3) to allow the deposition testimony of a government witness abroad based on the court's finding that there was a substantial likelihood that the witness was currently in the custody of a foreign government and not authorized to travel or would not be permitted into the United States due to their convictions).

witnesses remotely. (ECF No. 60 at 2). Defendants did not object, nor would they have objected, had plaintiff chosen in-person depositions instead. (Id.)

Plaintiff further disputes defendants' claim that an in-person deposition is preferable in that it allows the examiner to observe the demeanor of the witness, noting that some courts have opined that the questioner in a remote deposition might be provided with "a much closer view of a witness's reactions, responses, facial expressions even arguably better than an in-person deposition would." (ECF No. 57 at 4 (quoting Stapleton v. Prince Carpentry, Inc., 2023 WL 1785547, at *2)). However, the court's supposed endorsement of remote depositions in Stapleton was little more than an open-ended question of whether "one [can] really assess witness credibility in a deposition better virtually, or in person if the witness appears masked." 2023 WL 1785547, at *1. Ultimately, the court ordered the deposition to proceed in person as noticed, finding that the plaintiff's application to have the deposition conducted remotely was "not supported by evidence of the necessity to do so," and the alleged hardships were not "sufficient to overcome the noticing party's right to conduct the deposition in person." Id.

Moreover, while some courts have rejected arguments relating to the problems that may arise relating to technology and the benefits of in person depositions, others have continued to adhere to the general rule that the party seeking to conduct the deposition may select the method and place of deposition absent a showing of hardship. See Herrera v. City of New York, No. 19 CV 3216, 2020 WL 1879075, at *2 (S.D.N.Y. Apr. 15, 2020) (recognizing that "an in-person deposition is also preferable in terms of ensuring the accuracy of the depositions and interpretations" of testimony (quoting Memory Film Prods. v. Makara, No. 05 CV 3735, 2007 WL 1385740, at *3 (E.D.N.Y. May 9, 2007))); Stapleton v. Prince Carpentry, Inc., 2023 WL 1785547, at *1 (addressing the issue of technology and concerns related to COVID, but granting

defendants' motion to compel the deposition of plaintiff in person).  Indeed, although some courts have noted the improvements in technology, technological issues continue to arise, and it is notable that the Rule has not been amended to prohibit in-person depositions or create a universal presumption in favor of remote depositions notwithstanding the obvious efficiencies that may accompany such amendment.  Moreover, the Court notes that remote depositions, at least when conducted with the deponent at their home, present an additional problem of everyday distractions interfering with the deposition and detracting from counsel's ability to effectively question the witness.

The Court thus turns to the hardship cited by plaintiff in order to determine whether to order a remote deposition over defendants' objection.  Among the factors courts consider in determining whether to order a remote deposition are the hardship of the party or deponent in travelling to New York.  Davis v. Farrell, No. 16 CV 4874, 2017 WL 2817051, at *1 (E.D.N.Y. June 29, 2017).  Here, plaintiff claims that he has moved out of New York and is living somewhere in the "South."  He does not explain why there would be a hardship to him to travel to New York; he does not even specify where in the "South" he currently resides.[5]  Not only was he formerly residing in New York and commenced the action in this forum, but he also has not claimed any significant financial hardship or health concerns that would prevent him from traveling to New York for his deposition.  Cf. Uni-Systems, LLC v. U.S. Tennis Ass'n, 2018 WL 1335354, at *3.

Apart from claiming "hardship" to travel, plaintiff also claims that he is fearful that Robert Russo will be present at his deposition. (ECF No. 57 at 2).  In his letter, plaintiff alleges

---

[5] Based on the Declaration of Emanuel Kataev, Esq., counsel for defendants, dated January 12, 2024, it appears that plaintiff may currently reside in Georgia given that counsel for defendants has attached a printout from Expedia setting forth airfare prices from Georgia to New York. (Kataev Decl. (ECF No. 56) ¶ 11; see also id., Ex. C).

7

that apart from the fear he experiences as a result of the alleged attack by Mr. Russo, which underlies the claims in this case, he also alleges that he has "observed a cozy relationship between Russo's," which plaintiff defines to include Russo's Payroll Group, Robbie Russo, and Giuseppe Vacca, "and the NYPD, and long rumored ties between organized crime and Russo's, as well as memories of a similar racial experience" when he was a 16-year-old, chased by white boys with knives and sticks. (ECF No. 57 at 2). Plaintiff further claims that the connection between "Russo's" and the NYPD was reinforced by the fact that the witness, Joe Vacca, appeared for his deposition on Martin Luther King Jr. Day, wearing a "Blue Lives Matter" vest. (Id.)[6]

Having considered the plaintiff's arguments as to hardship, the Court finds that he has not sufficiently established either a financial, health-related, or other burden that would make it difficult for him to travel to New York for an in-person deposition. It is unclear whether, in voicing his concerns about risk of harm and the potentially concerning ties between "Russo's" and the NYPD, plaintiff means to refer to any one individual, a group of individuals, or the restaurant itself. In any event, Robbie Russo is now deceased, meaning he poses no threat of appearing at plaintiff's deposition. As for Mr. Vacca or any other individual affiliated with the defendants, plaintiff has not presented sufficient evidence of threats of harm. Plaintiff's own subjective concerns stemming from isolated incidents, the Russo's reputation, and their purported relationship with the NYPD do not justify overriding defendants' choice of an in-person deposition in the forum where plaintiff commenced this action.

---

[6] The Court notes that given the requirement of in person testimony during trial set forth in Fed. R. Civ. P. 43(a), it is likely that plaintiff will be required to appear in New York to testify in person absent a showing of "good cause in compelling circumstances." These unsubstantiated allegations of connections between the Russo's and the NYPD—absent specific threats against the plaintiff—do not amount to the types of compelling circumstances that would relieve plaintiff of the need to appear for trial, nor do they rise to the level of "hardship" that justifies overriding defendants' choice of an in-person deposition.

8

Accordingly, the Court Orders that plaintiff's deposition is to proceed in person. Plaintiff is also Ordered to reimburse defendants for the $200 cancellation fee that they incurred as a result of plaintiff's failure to appear. Plaintiff shall remit said payment no later than **August 30, 2024**.

B.  Non-Party Witness Danielle Silva

Defendants raise a second issue in their Motion, noting that on December 28, 2023, plaintiff produced an unsworn affidavit from Danielle Silva, who purports to be a former employee of the corporate defendant. (Defs.' Mot. at 2–3). According to plaintiff, Ms. Silva was a former Russo's employee, who witnessed the hostile work environment at Russo's and signed a statement in August 2020 indicating that Joe Vacca and Michael and Robbie Russo both used the "N-word" when talking to Black men. (ECF No. 57 at 5). According to defendants, they have no record of Ms. Silva working at Russo's. (ECF No. 55 at 3).[7] After plaintiff questioned Robbie Russo about Silva during his deposition, defendants requested that plaintiff produce Silva for a deposition or provide a last known address. (Id.) Defendant argues that although plaintiff acknowledged receiving defendants' request, and although plaintiff's counsel confirmed that he represents Ms. Silva, plaintiff has neither produced her for deposition or provided her address. (Id.)

In response to defendants' motion to compel the production of Ms. Silva or her last known address, plaintiff's counsel states that he does not have Ms. Silva's address and has been unable to reach her for some time. (ECF No. 57 at 5). Instead, plaintiff contends that defendants should be ordered to produce Ms. Silva's personnel file so plaintiff can track her down. (Id.)

---

[7] The Court notes that despite claiming they had no records for Ms. Silva because the files were lost in a flood, they later represented that they provided documents relating to Ms. Silva's employment at Russo's. (Compare ECF No. 55 at 3, with ECF No. 60 at 2).

9

Despite defendants' claim that the personnel files were lost during a flood in 2012, Vacca, the maître d' at the restaurant, testified that he was unaware of a flood. (Id.) In their Reply letter, dated January 22, 2024, defendants indicate that they have provided documents with respect to Ms. Silva's employment at Russo's, but that they are not aware of any personnel file of Ms. Silva. (ECF No. 60 at 2). However, defendants agree to produce the Insurance Claim that was filed when the files were lost. (Id.)

It is unclear from the parties' submissions whether plaintiff has provided defendants with the last known address for Ms. Silva that plaintiff had in 2020 when her sworn statement was provided, or whether defendant has produced the Insurance Claim they agreed to provide. If plaintiff has not provided that last known address and any other contact information they had for Ms. Silva, plaintiff is Ordered to do so. Defendants are Ordered to produce the Insurance Claim if they have not already done so. Beyond that, however, it appears the plaintiff does not have any current contact with Ms. Silva and cannot produce her for a deposition. Accordingly, the motion to compel with respect to Ms. Silva is DENIED.

II. Plaintiff's First Letter Motion

In a letter motion dated February 7, 2024, plaintiff contended that defendants were continuing to obstruct discovery in this case by dodging the depositions of non-party witnesses, Jaclyn Ceparano, Joanna Russo, and Frank Russo, Jr. ("Pl.'s First Mot."). (ECF No. 61 at 1). According to plaintiff, he noticed Ceparano's deposition for September 2023, only for defendants to cancel the deposition at the last minute. (Id.) Unable to secure dates for Ceparano or Joanna Russo, plaintiff moved to compel and the Court ordered the parties to provide deposition dates to be held by January 15, 2024. (ECF No. 52). Plaintiff claims that despite his efforts in early January 2024, defendants never provided dates and therefore the depositions were never held. (Pl.'s First Mot. at 1).

10

According to plaintiff, on January 11, 2024, defendants subsequently indicated that they would accept service of subpoenas for Frank Russo, Jaclyn Ceparano, and Joanna Russo, which plaintiff served that day, only to be told by defendants on January 22, 2024, that they could not accept service on behalf of Ceparano and Joanna Russo and that they could not reach the witnesses. (Id. at 2). According to plaintiff, he then hired an investigator to conduct a background search and served a subpoena on Ceparano for February 9, 2024, but defendants failed to confirm the date. (Id.) It appears from plaintiff's Reply letter, dated February 27, 2024 (ECF No. 63), that Ceparano was eventually deposed on February 16, 2024; thus, the motion with respect to her deposition is moot.

The background search for Joanna Russo revealed that she resides with "Michael Russo," who plaintiff asserts is employed by and has been the primary representative of Russo's during the litigation. (Id.) In plaintiff's Reply letter, plaintiff represents that during her deposition, Ceparano confirmed that Joanna Russo is married to Michael Russo. (Id. at 2, n.4). Defendants' counsel do not dispute this in their response to plaintiff's First Motion, nor have they disputed plaintiff's claim that despite agreeing to accept service on her behalf, they subsequently withdrew that offer. (Id.) This forced plaintiff's process server to attempt three times to serve Joanna Russo, including one attempt in which Michael Russo, her husband, apparently declined to accept service despite his involvement in this action. (Id.) Plaintiff thus questions whether defendants cannot reach Joanna Russo, noting that despite attempting to communicate with counsel about this, defendants' counsel had not responded prior to the filing of the instant motion. (Id. at 3).

With respect to Frank Russo, Jr., plaintiff claims that despite originally agreeing to accept service on his behalf, counsel informed plaintiff on January 30, 2024, that they would not

11

schedule dates for Russo, because "[plaintiff] clearly knew about his existence and alleged importance and yet still did not seek to depose him within the time set by the Court."  (Id. at 2). Plaintiff seeks to have the Court Order the depositions of Frank and Joanna Russo to proceed.

In response to plaintiff's motion, defendants argue that plaintiff failed to timely notice these non-party depositions within the time set by the Court's scheduling orders and since plaintiff did not request an extension of the deadline until February 7, 2024, under Second Circuit precedent, he is required to show "good cause" and "excusable neglect" in order to justify seeking an extension of the court's deadline.  (ECF No. 62 at 1 (citing Fed. R. Civ. P. 6(b)(1), and Powercap Partners LLC v. Fleischmann, No. 20 CV 3428, 2023 WL 2711316, at *2 (E.D.N.Y. Mar. 30, 2023))).  In his Reply letter, dated February 27, 2024, plaintiff lists the 15 attempts plaintiff's counsel made to schedule Frank Russo Jr.'s deposition with defendants' counsel, beginning on December 4, 2023, and the 16 attempts to schedule Joanna Russo's deposition, beginning on September 20, 2023.  (ECF No. 63 at 2).

Although defendants argue that plaintiff should be forced to show good cause and excusable neglect for failing to take these depositions prior to this Court's January 15, 2024 deadline for the conclusion of all depositions (see ECF No. 52), defendants have not provided any response to plaintiff's allegations that despite plaintiff's efforts to reach mutually agreeable dates for these depositions, defendants refused to cooperate and actively obstructed plaintiff's ability to complete the depositions within the deadlines set by the Court.  Considering that refusal, the Court finds that plaintiff has more than demonstrated the good cause required by Rule 6 to justify extending the deadlines for these depositions.[8]  Accordingly, the Court Orders

---

[8] Plaintiff can only be faulted for not contacting the Court immediately upon defendants' initial failure to provide or agree upon dates.  That fault, even if the result of "mere inadvertence," undoubtedly constitutes excusable neglect in this context.  Alexander v. Saul, 5 F.4th 139 (2d Cir. 2021); see also Powercap Partners LLC v. Fleischmann, No. 20 CV 3428, 2023 WL 2711316, at *3 (E.D.N.Y. Mar. 30, 2023) (noting that "excusable neglect

the depositions of Joanna Russo and Frank Russo, Jr. to proceed in accordance with the timelines set out below.

Moreover, under Federal Rule 37(b)(2)(A) and (C), the Court may award sanctions, including fees and costs, to any party that willfully disobeys a Court order. Agwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009). Although the plaintiff seeks an award of fees and costs at this time, the Court denies the request but warns that, in the future, if defendants refuse to provide dates for depositions or the Court sets dates and defendants fail to appear, sanctions will be imposed.

III.    Plaintiff's Second Letter Motion

The final motion before the Court is a letter motion filed by plaintiff on March 27, 2024 ("Pl.'s Second Mot."). (ECF No. 64). Plaintiff's Second Motion raises a dispute regarding the non-party deposition of Phillip Montante ("Montante"), who was the General Manager of Russo's catering hall at the time of the events at issue in this action. (Id.) Plaintiff asserts that when deposing an individual who had been identified as the HR department head, Jaclyn Ceparano, plaintiff learned that Montante directed all the actions she took in that role. (Id.) Accordingly, plaintiff served a subpoena seeking to depose Montante, which defendants oppose on the same grounds asserted with respect to the depositions of Frank Russo Jr. and Joanna Russo—namely, that the subpoena was served after the January 15, 2024, close of depositions as set by the Court. (ECF No. 65).

In response, plaintiff notes that he did not learn of Montante's role until after the deposition of Jaclyn Ceparano on February 16, 2024. (ECF No. 66). Four days after her deposition, plaintiff notified defendants that he would be serving a subpoena for Montante, and

---

is at bottom an equitable [inquiry], taking account of all relevant circumstances surrounding the party's omission" (quoting Petaway v. Osden, 827 F. App'x 150, 152 (2d Cir. 2020) (internal quotation marks omitted)).

13

plaintiff did so shortly thereafter, on February 27, 2024. (Id.) Although defendants' counsel declined to schedule Montante's deposition and indicated an intention to move to quash the subpoena, no such motion has been filed.

Since the Court already has been forced to reopen depositions based on the parties' combined inability to work together cooperatively, the Court grants plaintiff's Second Motion. Defendants are Ordered to cooperate with plaintiff to schedule the deposition of Montante in a manner consistent with the deadlines set forth below.

## CONCLUSION

For the aforementioned reasons, the Court will reopen discovery for the limited purpose of permitting the depositions noted above. The parties are Ordered to complete the reopened depositions by **September 23, 2024**. The parties shall file a joint letter with the agreed-upon schedule once the deposition dates have been determined. The parties are warned that if either party refuses to cooperate in the scheduling of these depositions, the Court will select dates for the parties to conduct the depositions, and a failure to appear will result in the imposition of sanctions, including Orders of preclusion, fees and costs, pursuant to Federal Rule of Civil Procedure 37.

Finally, following the Court's entry of the November 28th Order, the parties filed conflicting letters regarding defendants' compliance with said Order. (ECF Nos. 53–54). However, neither party formally moved to compel compliance with specific aspects of the Court's Order. To the extent that any of these issues remain outstanding, the parties are ordered to meet and confer on or before **August 23, 2024**, and, should the parties be unable to resolve the disputes, file their respective motions to compel within one week thereafter.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
       August 9, 2024

                                               /s/ Cheryl L. Pollak
                                           Cheryl L. Pollak
                                           United States Magistrate Judge
                                           Eastern District of New York